**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

VOELLER CONSTRUCTION, INC.,

    Plaintiff,

v.                                                                     Case No: 8:13-cv-3169-T-30MAP

SOUTHERN-OWNERS INSURANCE
COMPANY, *et. al.*,

    Defendants.

## ORDER

THIS CAUSE comes before the Court upon the Defendants/Counterplaintiffs Amerisure Insurance Company and Amerisure Mutual Insurance Company's Motion for Summary Judgment and Incorporated Memorandum of Law (Dkt. #22), Plaintiff's Response in Opposition to the Motion (Dkt. #25), Defendants' Reply to the Response (Dkt. #30), and Defendants' Motion to Strike Affidavit of William Voeller (Dkt. #29). Upon review and consideration, it is the Court's conclusion that the Motions should be denied.

*Background*

Voeller Construction, Inc. ("Voeller") filed this action seeking a declaration that Amerisure Insurance Company and Amerisure Mutual Insurance Company (collectively "Amerisure") owe a duty to defend or indemnify it under commercial general liability ("CGL") policies collectively effective from January 24, 2007, to May 9, 2009. In the case styled *The Bay Harbor Clearwater Condominium Association, Inc. v. Voeller Construction, Inc. et al.*, Case No. 12-5258-CI-19, currently pending in the Circuit Court of the Sixth Judicial Circuit in and for Pinellas County, Florida (the "Underlying Complaint"), the Bay Harbor Clearwater Condominium Association, Inc. (the "Association") is suing Voeller for statutory breach of warranty and building code violations which the Association alleges caused damage to the condominium structure. The

Association alleges that "[a]ll defects and deficiencies, including but not limited to those listed in Exhibit A, were latent defects unknown to the unit owners at the time of the sale of the units to members of the Association."

The Underlying Complaint attaches three reports: Karins Engineering Group, Inc.'s ("KEG") December 10, 2010 Turnover and Condition Report; (2) KEG's June 1, 2011 Window and Coating Condition Report; and (3) Claybrooke Engineering Associates, Inc.'s report dated May 31, 2011. In its Turnover and Condition Report, KEG states that it initially visited the site and completed its observations of the exterior components of the buildings, common elements, and a number of interiors and balconies on July 7, 2010. This is the earliest date mentioned in the Underlying Complaint for the discovery of the damage to the property. The property received a certificate of occupancy in 2007 and turnover of the property from the Developer to the owners occurred on May 4, 2010.

*Discussion*

### I. Motion for Summary Judgment Standard

Motions for summary judgment should be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no genuine issue of material fact." *Id.* at 248. The substantive law of the claimed causes of action will determine which facts are material. *Id*. All evidence must be examined in the light most favorable to the non-movant and all inferences must be drawn in his or her favor. *Id.* at 255.

### II. Amerisure's Motion for Summary Judgment

Amerisure moves for summary judgment on Voeller's Complaint and its Counterclaim for declaratory relief. It argues that a determination of Amerisure's duty to defend is ripe for summary adjudication since the allegations of the Underlying Complaint and incorporated exhibits allege that any "property damage" was initially discovered more than one year after the Amerisure policies expired. Therefore, it argues, because any alleged damage manifested outside of the Amerisure policy periods, coverage under the Amerisure policies is unavailable.

### a. Duty to Defend

In Florida, "the general rule is that an insurance company's duty to defend an insured is determined solely from the allegations in the complaint against the insured, not by the actual facts of the cause of action against the insured, the insured's version of the facts or the insured's defenses." *Amerisure Ins. Co. v. Gold Coast Marine Distribs., Inc.*, 771 So. 2d 579, 580–81 (Fla. 4th DCA 2000); *see also Jones v. Fla. Ins. Guar. Ass'n, Inc.*, 908 So. 2d 435, 442–43 (Fla. 2005). "If an examination of the allegations of the complaint leaves any doubt regarding the insurer's duty to defend, the issue is resolved in favor of the insured." *Lawyers Title Ins. Corp. v. JDC (America) Corp.,* 52 F.3d 1575, 1580–81 (11th Cir. 1995) (citations omitted). If the alleged facts and legal theories do not fall within a policy's coverage, no duty to defend arises. *Id*. at 1584. If the complaint alleges facts which create potential coverage under the policy, the duty to defend is triggered. *Trizec Props., Inc. v. Biltmore Construction Co.*, 767 F.2d 810, 811–12 (11th Cir. 1985) (citations and internal quotation marks omitted) (applying Florida law).

Based on the allegations in the Underlying Complaint, Amerisure argues that it had no duty to defend based on the theory that the property damage "occurred" when the Association first discovered the damage, which is known as the manifestation trigger theory. It argues that the Association alleged damages that were revealed only after the expert inspections in 2010, which occurred well after Amerisure cancelled coverage on May 9, 2009. Voeller argues that the injury-in-fact trigger theory applies and contends that the Underlying Complaint sufficiently

3

alleged damages of a longstanding nature that create the potential for coverage, which is enough to trigger Amerisure's duty to defend.

### III.    Trigger of Coverage Theories under Florida Law

For occurrence based CGL insurance policies, there must be a covered loss and the loss must occur within the policy period. *Auto Owners Ins. Co. v. Travelers Cas. & Sur. Co.*, 227 F. Supp. 2d 1248, 1265 (M.D. Fla. 2002). An "occurrence" triggers coverage under the policy when it results in "property damage." *See id*. Therefore, the damage itself must occur during the policy period for coverage to be effective. *Id.* (citing *Trizec Properties, Inc.*, 767 F.2d at 813. The Court must determine whether the Underlying Complaint contains sufficient allegations as to when the damage occurred to determine whether it triggers coverage under the CGL policies.

There are four generally accepted "trigger of coverage" theories which are (1) exposure, (2) manifestation, (3) continuous trigger, and (4) injury in fact. *Essex Builders Group, Inc. v. Amerisure Ins. Co.*, 485 F. Supp. 2d 1302, 1309 (M.D. Fla. 2006) (citing *Auto Owners Ins. Co. v. Travelers Cas. & Surety Co.*, 227 F.Supp.2d 1248, 1266 (M.D.Fla. 2002). The Florida Supreme Court has yet to issue an opinion on which "trigger of coverage" theory should apply under Florida law, and there is disagreement among the trial courts in Florida and district courts in the Middle District of Florida as to which theory governs. *See Axis Surplus Ins. Co. v. Contravest Const. Co.*, 921 F. Supp. 2d 1338, 1346 (M.D. Fla. 2012).

Some courts apply the injury in-fact trigger "under which damage 'occurs' at the moment there is actual damage and the date of discovery is irrelevant." *Axis Surplus Ins. Co.,* 921 F.Supp.2d at 1346; *see also Trizec*, 767 F.2d at 813 ("[I]t is the damage itself which must occur during the policy period for coverage to be effective."). Others apply variations of the manifestation trigger, under which damage occurs when it manifests or becomes discoverable. *See, e.g., Essex Builders Grp., Inc. v. Amerisure Ins. Co.*, 485 F.Supp. 2d 1302, 1309 (M.D.Fla. 2006), *Auto Owners Ins. Co.*, 227 F.Supp. at 1266. This disagreement appears to stem from

4

different interpretations of two cases—*Trizec Properties, Inc. v. Biltmore Construction Co.*, 767 F.2d 810 (11th Cir. 1985), *and Travelers Insurance Co. v. C.J. Gayfer's & Co.*, 366 So. 2d 1199, 1200 (Fla. 1st DCA 1979). *See Axis Surplus Ins. Co.,* 921 F. Supp. 2d at 1346.

In *Gayfer's*, the first case to apply the manifestation rule in Florida, the court stated that "[t]he term 'occurrence' is commonly understood to mean the event in which negligence manifests itself in property damage or bodily injury, and it is used in that sense here." 366 So. 2d at 1202. Thereafter, several cases interpreted *Gayfer's* holding to mean that Florida courts follow the manifestation trigger theory. *See e.g. American Motorists Ins. Co. v. Southern Security Life Insurance Co.*, 80 F.Supp.2d 1280 (M.D.Ala. 2000) (interpreting Florida law); *Auto Owners Insurance Co.*, 227 F.Supp.2d at 1266 ("Florida courts follow the general rule that the time of occurrence within the meaning of an 'occurrence' policy is the time at which the injury first manifests itself.") However, the issue of when damage occurs in order to trigger coverage was not directly before the *Gayfer's* court. The Court analyzed whether a negligent act alone was sufficient to trigger damages. *See Axis Surplus Ins. Co.*, 921 F. Supp. 2d at 1347; *Gayfer's*, 366 So. 2d at 1202 ("the phrase "caused by an occurrence" informs the insured that an identifiable event other than the causative negligence must take place during the policy period.")

*Trizec* more directly addressed the issue of when damage occurs in order to trigger coverage. In *Trizec*, the underlying complaint alleged that a roof deck was negligently installed causing water intrusion damage. 767 F.2d at 811. The underlying complaint did not allege when the damage began to occur but alleged that the defects were latent and were not discovered until their manifestation in 1979. *Id*. The policy at issue in *Trizec* was similar to the one at issue here and required the insurer to cover "property damage ... caused by an occurrence." *Id*. at 812. (emphasis removed). Property damage was then defined as "physical injury to or destruction of tangible property occurring during the policy period." *Id*. (quotation omitted). Like the policy at issue here, the property damage had to occur during the policy period to trigger coverage.

5

The *Trizec* court interpreted this language using an injury-in-fact analysis, stating that "the damage itself ... must occur during the policy period for coverage to be effective" and that "[t]here is no requirement that the damages 'manifest' themselves during the policy period" to trigger coverage. *Id*. at 813. The court limited its holding to the specific terms of the policy before it, *id*. n. 6; and held that the manifestation theory was incompatible with the language of the policy at issue.

The Court is persuaded by the analysis in *Trizec* and concludes that the injury-in-fact trigger is the appropriate theory for this occurrence based policy since the policy at issue here and the one in *Trizec* are materially similar. *See also Axis Surplus Ins. Co.*, 921 F.Supp.2d at 1346-48 (reviewing the lines of cases that apply the injury-in-fact trigger and the manifestation trigger under Florida law and concluding that the injury-in fact trigger is the appropriate method for determining coverage). Therefore, because the allegations in the Association's complaint suggest that physical damage occurred at some point after the buildings were completed in 2007 and before KEG's inspection of the property in July 2010, *see* Dkt. 17-1, and Amerisure's policies were in effect during this timeframe, Amerisure has a duty to defend Voeller in the Underlying Action. *See id*. at 1349 (reaching the same conclusion based on a factually similar complaint). Amerisure has failed to meet its burden to prove it is entitled to summary judgment as a matter of law.

*See also Trizec Properties, Inc.,* 767 F.2d at 813 ("the actual date that the damage occurred is not expressly alleged, but the language of the complaint, at least marginally and by reasonable implication, could be construed to allege that the damage (cracking and leaking of roof deck with resultant rusting) may have begun to occur immediately after installation, 1971 to 1975, and continued gradually thereafter over a period of time. The complaint's allegations are therefore broad enough to allow *Trizec* to prove that at least some of the damage occurred during Liberty's policy period, 1972 to 1976.") (internal quotation and citation omitted); *Trovillion Const. & Dev., Inc. v. Mid-Continent Cas. Co.*, 6:12-CV-914-ORL-37, 2014 WL 201678 (M.D.Fla. 2014) (reaching the same conclusion).

### IV.        Voeller's Affidavit in Opposition

In Florida, the general rule is "that an insurer's obligation to defend is determined solely by the claimant's complaint if suit has been filed." *Composite Structures, Inc. v. Cont'l Ins. Co.*, 903 F. Supp. 2d 1284, 1288 (M.D. Fla. 2012) *aff'd*, 12-15866, 2014 WL 1069253 (11th Cir. 2014) (citing *Higgins v. State Farm Fire & Cas. Co.*, 894 So. 2d 5, 10 (Fla. 2004)). However, "there are some natural exceptions to this where an insurer's claim that there is no duty to defend is based on factual issues that would not normally be alleged in the underlying complaint." *Id*. (quoting *Higgins*, 894 So. 2d at 10, n. 2). Those exceptions include special circumstances, where a court may consider extrinsic facts if those facts are undisputed, and, had they been pled in the complaint, they clearly would have placed the claims outside the scope of coverage. *See Nateman v. Hartford Cas. Ins. Co.*, 544 So. 2d 1026 (Fla. 3d DCA 1989); *Nationwide Mut. Fire Ins. Co. v. Keen*, 658 So. 2d 1101 (Fla. 4th DCA 1995). In this case, the Association's complaint is silent as to when Voeller began construction of the condominiums, when the property damage initially occurred or could have occurred, or when the individual unit owners purchased the property or initially became aware of the damage on the property.

Voeller filed the affidavit of William Voeller, the president of the company who asserts that on November 7, 2008, Voeller received a letter from the Association regarding building construction problems. The letter shows that the Association discovered the property damage within the policy period and therefore, even under a manifestation trigger theory, the Underlying Lawsuit provides coverage. Voeller argues that the letter is admissible as evidence in this summary judgment because it falls within the narrow exception.

The Court disagrees. The cases discussing this specific exception involve uncontroverted facts outside of the allegations in the underlying complaint that refer to facts that take the case outside of the policy coverage, not those that bring the case within coverage. *See e.g Composite Structures, Inc*. 2014 WL 106923 at *4; *Nationwide Mut. Fire Ins. Co. v. Keen*, 658 So. 2d at 1103

7

("if uncontroverted evidence places the claim outside of coverage, and the claimant makes no attempt to plead the fact creating coverage or suggest the existence of evidence establishing coverage, we think the carrier is relieved of defending."); *Acosta, Inc. v. Nat'l Fire Ins. Co.*, 39 So. 2d 565 (Fla. 1st DCA 2010) (policy under which the insured claimed defense and liability coverage contained a prior litigation exclusion).

## V.   Amerisure's Motion to Strike Voeller's Affidavit

Under Federal Rule of Civil Procedure 12(f), a court may, on its own motion or by motion of a party, "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." A motion to strike should be granted only if "the matter sought to be omitted has no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party." *Reyher v. Trans World Airlines, Inc.*, 881 F.Supp. 574, 576 (M.D.Fla. 1995) (internal citations omitted). Because this standard is rarely met, "[m]otions to strike are generally disfavored by the Court and are often considered time wasters." *Somerset Pharm., Inc. v. Kimball*, 168 F.R.D. 69, 71 (M.D.Fla. 1996). The Court concludes that striking the Affidavit is not appropriate under these facts.

## VI.   Duty to Indemnify

The Court denies Amerisure's Motion for Summary Judgment regarding the duty to indemnify. Unlike the duty to defend which generally relies solely on the allegations of the underlying complaint, an insurer's duty to indemnify relies upon the actual facts of the underlying claims. *Auto Owners Ins. Co.*, 227 F.Supp.2d at 1258 (citing *State Farm Fire & Cas. Co. v. CTC Dev. Corp.* 720 So. 2d 1072, 1077 n. 3 (Fla. 1998)). There are insufficient facts before the Court to determine whether Amerisure has a duty to indemnify Voeller, and therefore the Court must deny the Motion for Summary Judgment as to this claim.

It is therefore ORDERED AND ADJUDGED that:

1. Defendants/Counterplaintiffs Amerisure Insurance Company and Amerisure Mutual Insurance Company's Motion for Summary Judgment and Incorporated Memorandum of Law (Dkt. #22) is DENIED.

2. Defendants' Motion to Strike Affidavit of William Voeller (Dkt. #29) is DENIED.

**DONE** and **ORDERED** in Tampa, Florida, this 5th day of May, 2014.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record
S:\Odd\2013\13-cv-3169 msj 25.docx