UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

VOELLER CONSTRUCTION, INC.,

    Plaintiff,

v.                                                Case No: 8:13-cv-3169-T-30MAP

SOUTHERN-OWNERS INSURANCE
COMPANY and AMERISURE
INSURANCE COMPANY,

    Defendants.

## ORDER

THIS CAUSE comes before the Court upon the Plaintiff's Motion for Partial Summary Judgment (Dkt. #36), Defendant Southern-Owners Insurance Company's Response in Opposition to the Motion for Partial Summary Judgment and Cross-Motion for Summary Judgment (Dkt. #41), and Plaintiff's Response in Opposition to the Cross-Motion for Summary Judgment (Dkt. #48). Upon review and consideration, it is the Court's conclusion that partial summary judgment should be granted in favor of the Plaintiff.

*Background*

Voeller Construction, Inc. ("Voeller") filed this action seeking a declaration that Amerisure Insurance Company and Amerisure Mutual Insurance Company (collectively "Amerisure") owe a duty to defend and indemnify it under commercial general liability ("CGL") policies collectively effective from January 24, 2007, to May 9, 2009. Voeller


also sought a declaration that Southern-Owners Insurance Company ("Southern-Owners") owes a duty to defend and indemnify it under CGL policies in effect between May 9, 2009, and May 5, 2014, (the "CGL Policies").

In the case styled *The Bay Harbor Clearwater Condominium Association, Inc. v. Voeller Construction, Inc. et al.*, Case No. 12-5258-CI-19, currently pending in the Circuit Court of the Sixth Judicial Circuit in and for Pinellas County, Florida (the "Underlying Action"), the Bay Harbor Clearwater Condominium Association, Inc. (the "Association") is suing Voeller for statutory breach of warranty and building code violations which the Association alleges caused damage to the Condominium and its components.

The Underlying Action attaches three reports: Karins Engineering Group, Inc.'s ("KEG") December 10, 2010 Turnover and Condition Report; (2) KEG's June 1, 2011 Window and Coating Condition Report; and (3) Claybrooke Engineering Associates, Inc.'s report dated May 31, 2011. In its Turnover and Condition Report, KEG states that it initially visited the site and completed its observations on July 7, 2010.

This Court entered partial summary judgment against Amerisure holding that the Underlying Action alleged sufficient facts to suggest that the alleged physical damage occurred at some point after the buildings were completed in 2007 and before KEG's inspection in July 2010. Therefore, the Court concluded that under the "injury-in-fact" trigger theory, the injury occurred during the policy period requiring Amerisure to defend Voeller against the Underlying Action. Voeller now moves for partial summary judgment against Southern-Owners.

*Discussion*

### I. Motion for Summary Judgment Standard

Motions for summary judgment should be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no genuine issue of material fact." *Id.* at 248. The substantive law of the claimed causes of action will determine which facts are material. *Id.* All evidence must be examined in the light most favorable to the non-movant and all inferences must be drawn in his or her favor. *Id.* at 255.

### II. The Motions for Summary Judgment

Voeller moves for summary judgment against Southern-Owners arguing that since the CGL Policies were in force during the time period between the completion of the buildings and the inspection revealing the physical damage, the Underlying Action sufficiently alleges an occurrence triggering Southern-Owners' duty to defend. Southern-Owners opposes the Motion, and moves for summary judgment in its favor regarding its duty to defend and indemnify. It does not dispute that the CGL policies were in effect during the relevant time period, but argues that the Underlying Action does not allege

"property damage" as defined in the CGL Policies, and alternatively, the CGL Policies' exclusions preclude coverage.

### a. Duty to Defend

In Florida, "the general rule is that an insurance company's duty to defend an insured is determined solely from the allegations in the complaint against the insured, not by the actual facts of the cause of action against the insured, the insured's version of the facts or the insured's defenses." *Amerisure Ins. Co. v. Gold Coast Marine Distribs., Inc.*, 771 So. 2d 579, 580–81 (Fla. 4th DCA 2000); *see also Jones v. Fla. Ins. Guar. Ass'n, Inc.*, 908 So. 2d 435, 442–43 (Fla. 2005). "If an examination of the allegations of the complaint leaves any doubt regarding the insurer's duty to defend, the issue is resolved in favor of the insured." *Lawyers Title Ins. Corp. v. JDC (America) Corp.,* 52 F.3d 1575, 1580–81 (11th Cir. 1995) (citations omitted). If the alleged facts and legal theories do not fall within a policy's coverage, no duty to defend arises. *Id*. at 1584. If the complaint alleges facts which create potential coverage under the policy, the duty to defend is triggered. *Trizec Props., Inc. v. Biltmore Construction Co.*, 767 F.2d 810, 811–12 (11th Cir. 1985) (citations and internal quotation marks omitted) (applying Florida law).

### b. Relevant Policy Language

The CGL Policies cover "property damage" that occurs within the policy period. They define "property damage" as:

> a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

4

> b. Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the "occurrence" that caused it.

The CGL Policies also contain a "your work" exclusion, and define "your work" as: "(1) [w]ork or operations performed by you or on your behalf; and (2) [m]aterials, parts or equipment furnished in connection with such work or operations." "Your work" also includes: "(1) [w]arranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your work'; and (2) [t]he providing of or failure to provide warnings and instructions."

The CGL Policies specifically exclude property damage to the insured's work "arising out of it or any part of it and included in the 'products-completed operations hazard.'" It further excludes "[d]amages claimed for any loss, cost or expense incurred by [the insured] or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of: ... '[the insured's] work' …if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it."

### c. Allegations in the Underlying Action

The Underlying Action alleges that Voeller "constructed the Condominium … prior to conveyance to individual unit owners" and defines the "Condominium" as "the Bay Harbor Clearwater Condominium Association, Inc., …which includes nineteen (19) residential units and appurtenant common elements." It further alleges that "[t]he causes of action alleged herein concern matters of common interest to the Condominium's unit

5

owners, including, but not limited to: the common elements; the seawall, the roof and structural and other components of the Condominium; and mechanical, electrical, plumbing and/or fire protection system elements serving the Condominium."

The Underlying Action further alleges that Voeller defectively built the Condominium and defectively installed its components. It alleges that the "defective components and/or defectively installed components described above have resulted in physical damage to themselves, to other components of the Project, are presently causing physical damage to or at the Project, and until repaired will continue to cause additional physical damage." It alleges certain consequential damages, i.e. cracking on the rooftop parapet wall caused by improper curing of stucco, water intrusion throughout the Condominium caused by the cracks on the rooftop parapets, cracking in stair landings, corrosion of metal door frames, extensive cracking of pavers and sidewalks, etc.

### d. "Property Damage" and the "Your Work" Exclusion

Under Florida law, a claim for the cost of removing or repairing defective construction does not qualify as a claim for "property damage." *Auto-Owners Ins. Co. v. Pozzi Windows Co.,* 984 So. 2d 1241, 1248 (Fla. 2008) ("If there is no damage beyond the faulty workmanship or defective work, then there may be no resulting property damage.") (quoting *U.S. Fire Ins. Co. v. J.S.U.B., Inc*. 979 So. 2d 871, 889 (Fla. 2007)). However, any allegations regarding damage to "other property" caused by the faulty workmanship or defective construction are potentially covered by a CGL policy. *See J.B.D. Const., Inc. v. Mid-Continent Cas. Co.*, 571 Fed. App'x. 918, 925 (11th Cir. 2014) (holding that under Florida law, allegation that insured general contractor's defective work on a fitness center

resulted in damage to "other property" potentially fell within coverage of insured's CGL policy, thus triggering insurer's duty to defend; allegation potentially included damage to non-fitness center property that fell outside of policy's "your work" exclusion.)

Since Voeller constructed the Condominium and installed its components, the "your work" exclusion combined with the "property damage" definition results in no coverage for claims against Voeller for the cost to repair or replace any damage to the completed Condominium or its components. However, if the Underlying Action alleges sufficient facts regarding damage to "other property" besides the Condominium and its components, it is potentially covered under the CGL Policies.

The facts in this case are similar to those in *J.B.D. Const., Inc.* where the owner of the fitness center noticed damage caused by water leaks in the fitness center's roof, windows, and doors.  *Id*. at 920. This damage included rusting steel, peeling paint, and blistering and discolored stucco. *Id*. It sued J.B.D. and alleged that J.B.D.'s construction defects and deficiencies violated minimal building codes, caused damage to the building, and caused "damages to the interior of the property, other building components and materials, and other, consequential and resulting damages" and "damage to other property." *Id*. The Eleventh Circuit reversed the district court's holding that the insurer had no duty to defend, and stated that:

> Count II of the Sun City Counterclaim, which is the statutory civil action for violations of the Florida Building Code, unequivocally states a claim for "damage to other property" caused by J.B.D.'s alleged building code violations. This reference to "other property" potentially included damage to non-fitness center property such as the adjacent Atrium building to which the fitness center was being connected or

>damage to other equipment, such as exercise machines, which may have been moved into the building post-construction. Count III of the Counterclaim, the negligence claim, also references "damages to the interior of the property, other building components and materials," and thus potentially includes allegations of damage to the same non-project property. Accordingly, these allegations of damage to property other than the fitness center caused by J.B.D.'s or its subcontractor's defective work potentially came within MCC Policy coverage and, therefore, triggered MCC's duty to defend J.B.D. in the entire suit

*Id*. at 926.

The Court concludes that the Underlying Action alleges sufficient facts regarding damage to "other property" to invoke potential coverage under the CGL Policies. Although the majority of the Underlying Action pleads damage to the defectively constructed Condominium and its components, it also alleges damage to the "Project" (an undefined term in the Underlying Action) and other components of the Project. Further, the KEG report attached to the Underlying Action references damage to the existing sea wall which was in place prior to construction, and water intrusion in the equipment and elevator rooms which may contain equipment added post-construction. These allegations reference damage to "other property" which triggers Southern-Owners' duty to defend.

To the extent that there is any doubt that the Underlying Action sufficiently alleges damage to "other property," the Court resolves that doubt in favor of the insured. *See Lawyers Title Ins. Corp.*, 52 F.3d at 1580-81 ("If an examination of the allegations of the complaint leaves any doubt regarding the insurer's duty to defend, the issue is resolved in favor of the insured.").

*Conclusion*

The Court grants Voeller's Motion for Partial Summary Judgment and declares that the allegations in the Underlying Action allege sufficient facts to trigger Southern-Owners' duty to defend under the CGL Policies. Since the duty to indemnify is narrower than the duty to defend and depends on factual discovery and the outcome of the litigation in the Underlying Action, the Court denies Southern-Owners' Cross-Motion for Summary Judgment regarding its duty to indemnify as premature. *See Khatib v. Old Dominion Ins. Co.*, 153 So. 3d 943, 947 (Fla. 1st DCA 2014), reh'g denied (Jan. 15, 2015).

Since the Court has entered partial summary judgment declaring that both Amerisure and Southern-Owners has a duty to defend Voeller against the Underlying Action, the only remaining issue is whether either Defendant has a duty to indemnify Voeller. The Court will stay this action pending resolution of the Underlying Action.

It is therefore **ORDERED AND ADJUDGED** that:

1. Plaintiff's Motion for Partial Summary Judgment (Dkt. #36) is GRANTED.

2. Defendant Southern-Owners Insurance Company's Cross-Motion for Summary Judgment (Dkt. #41) is DENIED.

3. This action is stayed pending the resolution of the case styled *The Bay Harbor-Clearwater Condominium Assoc., Inc. v. Voeller Construction, Inc. et al.*, Pinellas County Circuit Court Case No. 12-5258-CI-19.

4. The Clerk of Court is directed to administratively close this case.

5. The parties shall file a joint status report within seven (7) days of the resolution of the Underlying Action.

**DONE** and **ORDERED** in Tampa, Florida, this 13th day of March, 2015.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record

S:\Odd\2013\13-cv-3169 msj 36 41.docx

10